UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DENNIS DUANE POINDEXTER, JR.,

        Plaintiff,                      Case No. 2:21-cv-157

v.                                     Honorable Maarten Vermaat

CONNIE HORTON et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to the undersigned conducting all proceedings in the case. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Whitmer, Washington, and Horton. The Court also will dismiss for failure to state a claim the following claims against the remaining Defendants: Plaintiff's due process claim, and his Eighth Amendment claim based on the allegedly inhumane conditions in segregation.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Michigan Governor Gretchen Whitmer, MDOC Director Heidi Washington, and the following URF officials: Warden Connie Horton; Inspector Unknown Miller; Assistant Deputy Warden (ADW) Unknown Batho; Resident Unit Manager (RUM) T. Corey-Spiker; Assistant RUM (ARUM) and Prisoner Counselor (PC) Unknown Plumm; PC Unknown Wannacott; and an unknown nurse and head of health care (Unknown Party #1).

Plaintiff alleges that, on February 1, 2020, at approximately 5:00 p.m., he was involved in a fight in the small yard. He was sent to segregation. Inspector Miller interviewed Plaintiff about the fight on February 2, 2020. Plaintiff told Miller that he did not know who his attackers were and did not know why they had attacked him. Plaintiff suggested that he should be transferred to another prison for his own safety.

Inspector Miller did not believe that Plaintiff knew nothing about the attack. He stated that, seeing that Plaintiff wanted to lie and would not snitch, he would not be transferred and, "[G]ood luck next time." (Compl., ECF No. 1, PageID.4.) On February 7, 2020, after Plaintiff learned that the other prisoner involved in the fight had been transferred out, he wrote Warden Horton, asking to be transferred as well. He received no response to his kite.

When Plaintiff spoke with RUM Corey-Spiker for the first time after the fight, Defendant asked why the fight took place. Plaintiff again stated that he had no idea and asked to be transferred to another facility. Corey-Spiker told Plaintiff that he needed to stop lying and being

so cocky. Corey-Spiker advised that Plaintiff would not be transferred and that, if Plaintiff refused to return to general population, he would receive misconduct tickets.

Plaintiff filed a grievance on February 10, 2020, stating that he would be placed in danger if he was not transferred. He received no response. Plaintiff sent a kite to the grievance coordinator on February 13, but again received no response. Plaintiff was placed back in general population on February 15.

On February 21, 2020, at approximately 5:20 p.m., Plaintiff was in the yard when he was forced to fight again to protect himself. He was again sent to segregation. Inspector Miller came to talk to Plaintiff, and Plaintiff again stated that he did not know who the other prisoner was or why the prisoner wanted to fight Plaintiff. Plaintiff asked to be transferred for his safety. Miller told Plaintiff to stop lying and informed Plaintiff that he would not be transferred. Miller again told Plaintiff, "[G]ood luck in G.P. [general population]." (*Id.*, PageID.5.)

Believing that his safety was in danger, Plaintiff wrote to Warden Horton on March 2, 2020, complaining that he needed to be transferred but was instead being forced to go back to general population or incur a misconduct charge for his refusal. When he received no reply to his kite, Plaintiff wrote to Director Washington, indicating that he wished to be transferred for his safety, and he requested but received no assistance from Defendants Miller, Corey-Spiker, and Plumm. Thirty days later, Plaintiff sent a letter to Gov. Whitmer seeking the same relief. He received no response.

Plaintiff complains that he subsequently received misconduct tickets for eight months because he refused to return to general population. He was forced back into general population on October 23, 2020. That same day, an unknown prisoner struck Plaintiff in the head with a lock contained inside of a sock. Plaintiff alleges that he was denied proper medical

treatment after the attack. On October 23, he was told that he was all right. On October 24, he sent a kite to healthcare, complaining that his hands were going numb and he could not keep food down. An unknown nurse conducting rounds told Plaintiff that he should get some rest and he would be okay. On October 26, Plaintiff sent another kite to healthcare, complaining that his hands were still numb, he had no grip, and he became dizzy if he stood. He never received a response.

Since the October 2020 attack, Plaintiff has been in segregation. Defendants Horton, Batho, Corey-Spiker, Plumm and Wannacott refuse to believe that Plaintiff's safety is at risk. They continue to issue misconduct tickets when Plaintiff refuses to go to general population. Plaintiff filed another grievance on March 18, 2021.

Plaintiff claims that Defendants denied him his right to due process under the Fifth Amendment by ignoring his kites and grievances and/or handling those grievances improperly. He also alleges that that Defendants violated his rights under the Eighth Amendment by failing to protect him, by keeping him in segregation for ten months, and by denying him medical treatment.

Plaintiff seeks compensatory damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Due Process

Plaintiff alleges that Warden Horton and Unknown Party #1 denied him due process by improperly handling his grievances. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v.*

5

*Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, no Defendant's conduct deprived him of due process.

## IV. Supervisory Liability

Plaintiff otherwise fails to make specific factual allegations against Defendants Whitmer, Washington, Horton, other than his claim that they failed to supervise their subordinates and failed to take action in response to his kites or grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Whitmer, Washington, and Horton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

6

V.      **Eighth Amendment**

Plaintiff raises two Eighth Amendment claims against Defendants Miller, Batho, Corey-Spiker, Plumm, and Wannacott. First, he alleges that these Defendants violated the Eighth Amendment when they refused to provide him protection from assaults by other prisoners, despite knowing that Plaintiff had previously been the subject of attacks. Second, Plaintiff alleges that these Defendants violated the Eighth Amendment by keeping him under segregation conditions for eight months and later ten months, simply because he could not safely return to general population. In addition, Plaintiff alleges that Defendant unknown nurse and head of healthcare (Unknown Party #1) violated the Eighth Amendment when they refused to treat his medical complaints arising out of being hit in the head with a lock in a sock.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"

7

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### A. Segregation: Defendants Miller, Batho, Corey-Spiker, Plumm, & Wannacott

Plaintiff alleges that Defendants Miller, Batho, Corey-Spiker, Plumm, and Wannacott improperly kept him in segregation for eight months, solely because he feared returning to general population. Since the third attack, Plaintiff alleges, Defendants have kept him in segregation for an additional ten months. Plaintiff alleges that the conditions of confinement in segregation are inhumane and violate the Eighth Amendment.

Plaintiff's allegation that conditions in segregation are inhumane is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Moreover, courts routinely have recognized that placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Although administrative segregation necessarily results in the deprivation of a number of privileges, Plaintiff fails to allege facts indicating that he was denied basic human needs. He therefore fails to state an Eighth Amendment claim based on his placements in segregation.

### B. Failure to Protect—Defendants Miller, Batho, Corey-Spiker, Plumm & Wannacott

Plaintiff's principal set of Eighth Amendment allegations involves the failure of Defendants Miller, Batho, Corey-Spiker, Plumm, and Wannacott to protect him from further attacks, both by refusing to transfer him and by placing him back in general population despite prior assaults.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that must "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violene at the hands of other prisoners." *Id.* at 833. To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Miller, Batho, Corey-Spiker, Plumm, and Wannacott based on their failures to protect Plaintiff.

### C. Lack of Medical Care—Unknown Party #1

Plaintiff alleges that an unknown nurse and head of healthcare (Unknown Party #1 refused to provide him medical care in response to his kites, notwithstanding his complaints about being hit in the head with a lock in a sock and his reported symptoms of vomiting, dizziness, and numbness in his hands.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is or was incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's

10

claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Here, Plaintiff alleges that he sent two kites seeking medical care, stating that he had been hit in the head when a prisoner swung a sock containing a lock at him. He also reported that, since the head injury, he was dizzy, vomiting, and his hands were numb. Unknown Party #1, however, never scheduled a visit with a medical provider and never examined Plaintiff. The Court concludes that Plaintiff's allegations on this claim are sufficient to go forward.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Whitmer, Washington, and Horton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The

Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's due process claims and his Eighth Amendment claim based on the conditions of confinement in segregation. Plaintiff's Eighth Amendment claim concerning Defendants' failure to protect him and failure to provide medical care remain in the case.

An order consistent with this opinion will be entered.

Dated:  September 10, 2021                          /s/ *Maarten Vermaat*
                                                                         Maarten Vermaat
                                                                         United States Magistrate Judge